UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT H. AJAMIAN,

                                    Plaintiff,

                                                                1:14-CV-00321
v.                                                              (DNH/TWD)

SAMUEL EGISH ZAKARIAN of
Continental Broker-Dealer Corp., Arbitration
13-02182,

                                    Defendant.
_____

APPEARANCES:

ROBERT H. AJAMIAN
Plaintiff *pro se*
30 Eberle Road
Latham, New York 12110

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk has sent this *pro se* civil rights Complaint, brought under 42 U.S.C. § 1983,

together with two applications to proceed *in forma pauperis* and motion for appointment of

counsel, to the Court for review.  (Dkt. Nos. 1, 5, 6, 17.)   For the reasons discussed below, I grant

Plaintiff's second application to proceed *in forma pauperis*, deny the first application as moot,

deny his motion for appointment of counsel without prejudice, and recommend that the District

Court *sua sponte* dismiss his Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).  Plaintiff's second *in forma pauperis*

application is identical to the application filed by Plaintiff in *Robert H. Ajamian v. Morgan Stanley Smith Barney, Broker Edward Dominguez*, No. 1:14-CV-00306 (DNH/ATB) (N.D.N.Y.) *"Morgan Stanley,"* a similar action commenced on March 21, 2914.  (*Morgan Stanley*, Dkt. No. 4.)  In that case, Magistrate Judge Andrew T. Baxter, despite finding the application incomplete, granted Plaintiff *in forma pauperis* status for purposes of filing only.  (*Morgan Stanley*, Dkt. No. 6 at 1-2.)  In a nearly identical action commenced by Plaintiff on March 24, 2014, against a stock broker at a different brokerage firm, Magistrate Judge Christian M. Hummel granted Plaintiff's slightly more detailed fourth application to proceed *in forma pauperis*.  *See Robert H. Ajamian v. Kinan Nimeh, Stock Broker at GunnAllen Financial, Arbitration, 13-02183*, No. 1:14-CV-00320 (GTS/CFH) (N.D.N.Y.) (Dkt. Nos. 9, 15.)  In light of those determinations, despite some concern over the incomplete nature of the information submitted by Plaintiff, the Court grants his second application to proceed *in forma pauperis* for purposes of filing the Complaint only.  (Dkt. No. 6.) The Court denies Plaintiff's first application (Dkt. No. 5) as moot.

## II.      THE COMPLAINT

Plaintiff has commenced this action against Defendant Samuel Egish Zakarian ("Zakarian"), of Continental Broker-Dealer Corp. ("Continental"), for the alleged violation of his constitutional rights by failing to make conservative, safe investments in Plaintiff's Keogh retirement account during the years 2002 to 2005.  (Dkt. No. 1 at ¶ 4.)  Plaintiff has also asserted state law claims for breach of fiduciary duty, breach of contract, negligence, criminal misrepresentation, and fraudulent concealment against Zakarian.[1]  *Id*. at p. 1.

---

[1]  With regard to Plaintiff's criminal misrepresentation claim, it is well-settled law in this Circuit that there is no constitutional right to have criminal wrongdoers prosecuted.  *See Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1982) ("It is a

In addition, in correspondence sent subsequent to the filing of his Complaint, Plaintiff has disclosed to the Court that he intended to state his claim under the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5 in his Complaint. (Dkt. No. 10.) According to Plaintiff, he sustained actual damages of $53,000 as a result of Zakarian's actions and seeks to recover treble damages of $150,000. (Dkt. No. 1 at ¶ 5.) Plaintiff claims that Defendant has now fled to his native Armenia because of his securities law violations. (Dkt. No. 11.)

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

_____

truism . . . that in our federal system crimes are always prosecuted by the Federal Government, not by . . . private citizens.")

3

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without

giving leave to amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.

1999) (citation and internal quotation marks omitted).  An opportunity to amend is not required

where "the problem with [the plaintiff's] causes of action is substantive" such that "better

pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV.    ANALYSIS

### A.    Civil Rights Claim under 42 U.S.C. § 1983

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that the

challenged conduct (1) was "committed by a person acting under color of state law," and (2)

"deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws

of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, ___ U.S. ___,

131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  Plaintiff has

alleged neither.

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its

reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins.

Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).   A

plaintiff must therefore allege facts showing that a defendant was either a state actor or a private

party acting under color of state law.[2] *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d

Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States

Constitution regulates only the Government, not private parties, a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct

constitutes 'state action.'").  Private actors have been found to engage in "state action" when they

are "willful participant[s] in joint activity with the State or its agents."[3] *Adickes v. S.H. Kress &*

*Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

Plaintiff claims that Defendant, who appears to have been Plaintiff's stock broker with

regard to a Keogh account, "violated [his] constitutional rights to conservative safe Keough (sic)

retirement account investments from 2002 to 2005."  (Dkt. No. 1 at ¶ 4.)  According to Plaintiff,

Defendant violated his constitutional rights through "conflict of interest, doing risky

manipulations of churning, puts, calls, options, excess margins to make huge commissions while

destroying [Plaintiff's] property."  *Id*. at ¶ 5.  Plaintiff has failed to specify the nature of the

constitutional rights allegedly implicated by Zakarian's actions, and the Court is unaware of any

---

[2]  A plaintiff is required to allege state action on the part of the defendants in his
complaint; and where he fails to do so, a court may dismiss an action under § 1915(e).  *See
O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5, 2010 U.S. Dist.
LEXIS 11639, at *19 (N.D.N.Y. Feb. 10, 2010).

[3]  The Supreme Court has identified other instances where a private party's actions may
be fairly attributed to state action, including: (1) where the challenged action results from the
State's exercise of coercive power; (2) when the State provides significant encouragement, either
overt or covert; (3) when a nominally private entity is controlled by an agency of the State; (4)
when a private entity has been delegated a public function by the State; and (5) when the private
entity is entwined with governmental policies, or the government is entwined in its management
or control.  *See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S.
288, 295 (2001).  None of these apply.

constitutional right to a conservative, safe Keogh account.

Furthermore, Plaintiff's Complaint is devoid of allegations plausibly showing that Defendant was acting under color of state law or engaged in state action with respect to Plaintiff's claim that he violated his constitutional rights. There are no facts alleged that remotely suggest Defendant was acting as anything other than a private individual with regard to Plaintiff's Keogh account. Therefore, the Court recommends that Plaintiff's § 1983 claim be dismissed.

### B.    Securities Laws Claim

In June 3, 2014, correspondence to the Court, Plaintiff explained that he has stated his claim "according to 10(b)(5) of the Securities and Exchange Act of 1934 material misrepresentation and omission." In light of Plaintiff's *pro se* status, the Court has reviewed his Complaint to ascertain whether his allegations regarding Defendant's mismanagement of his Keogh account state a claim under the Securities and Exchange Act of 1934 ("SEA"), § 10(b), 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.

Section 10(b) of the SEA prohibits any person from using or employing "any manipulative or deceptive device or contrivance" of SEC rules. 15 U.S.C. § 78j(b). Rule 10b-5 prohibits "any device, scheme, or artifice to defraud" and any "untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading . . . ." 17 C.F.R. § 240.10b-5. To state a claim under § 10(b) and Rule 10b–5, plaintiff must show "(1) a material misrepresentation or omission by defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4)

reliance by plaintiff upon the misrepresentation; (5) economic loss; and (6) loss causation."
*Erica P. John Fund, Inc. v. Haliburton Co.*, 563 U.S. ___,131 S. Ct. 2179, 2184 (2011) (quoting
*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. ___,131 S. Ct. 1309, 1317, 179 L. Ed. 2d 398
(2011)) (internal quotation marks omitted).

A claim under § 10(b) of the SEA, which provides a private right of action, sounds in
fraud and must meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil
Procedure and of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C.
§ 78u–4(b).  Rule 9(b) requires that the complaint "(1) specify the statements that the plaintiff
contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were
made, and (4) explain why the statements were fraudulent." *ATSI Communications, Inc. v. Shaar
Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir.2007).  General, conclusory, or speculative allegations,
unsupported by specific facts, are legally insufficient.  *Rombach v. Chang*, 355 F.3d 164, 176 (2d
Cir. 2004).

The PSLRA similarly requires that the complaint "specify each statement alleged to have
been misleading [and] the reason or reasons why the statement is misleading," and it adds the
requirement that "if an allegation regarding the statement or omission is made on information
and belief, the complaint shall state with particularity all facts on which that belief is formed." 15
U.S.C. § 78u–4(b)(1); *ATSI*, 493 F.3d at 99; *see also City of Roseville Employees' Ret. Sys. v.
Energy Solutions, Inc*., 814 F. Supp.2d 395, 401 (S.D.N.Y.2011).  Facts showing scienter must
be pleaded with particularity.  *See ATSI*, 493 F.3d at 99.  The requirement can be satisfied by
alleging "facts (1) showing that the defendants had both motive and opportunity to commit the
fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or

recklessness." *Id.*

Plaintiff claims that Defendant breached his fiduciary duty by engaging in churning and manipulations, non-disclosure and omission of facts, unauthorized activity, breach of contract, failure to supervise margin calls, negligence, criminal misrepresentation, and fraudulent concealment in connection with his handling of Plaintiff's Keogh account. (Dkt. No. 1 at 1.) The allegations appear in conclusory fashion in Plaintiff's Complaint with no elaboration or factual support. Plaintiff has, therefore, failed to comply with the pleading requirements of Rule 9(b) and the PSLRA. In fact, even without the heightened pleading requirements, Plaintiff's Complaint would fail to state a claim under § 10(b) and Rule 10b-5 because it is so lacking in factual content that it does not satisfy the plausibility requirement imposed under *Iqbal*, 556 U.S. at 678.

In addition, Plaintiff's securities claim against Defendant is barred by the applicable statute of limitations. The current limitations period for a securities fraud claim is the earlier of two years from discovery of facts underlying the violation or within five years of the violation. 28 U.S.C. § 1658(b) (repealing the former statute of limitations found in the SEA at 15 U.S.C. §78i(e)). Plaintiff alleges in his Complaint that Defendant engaged in churning and risky manipulations including puts, calls, and options, and excess margins from 2002 to 2005. (Dkt. No. 1 at ¶¶ 4-5.) It is therefore clear from the face of the Complaint that Plaintiff's claims are barred under the five year statute of limitations.[4]

---

[4] Where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on § 1915(e)(2)(B) review even though the statute of limitations bar is an affirmative defense. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Mercier v. Pataki*, No.

Plaintiff's claim is likewise barred under the two years from discovery of facts limitation period in § 1658(b).[5] Plaintiff's discovery of his claims cannot be determined from the face of the Complaint in this case. However, documents filed by Plaintiff in the Chapter 7 involuntary bankruptcy proceeding of Continental where, according to the Complaint, Defendant was a broker, reveal that Plaintiff knew of Defendant's allegedly wrongful conduct more than two years before this action was commenced.[6]

The Chapter 7 involuntary petition was filed with respect to Continental in August of 2004. (No. 8-04-85318-las, E.D.N.Y. Bankr. Ct. ("No. 8-04-85318-las"), Dkt. No. 1.) On August 26, 2011, Plaintiff filed a motion in the proceeding seeking damages in the amount of $65,000 from the Trustee's attorney and an insurance company. (No. 8-04-85318-las, Dkt. Nos. 262-263.) In his application in support of the motion, Plaintiff alleged that "Samuel Zakarian the broker did unauthorized margins, unauthorized trades, puts, calls, options that were not authorized it was a boiler room operation." *Id.*, 263 at 1. A hearing was held on October 27,

---

1:06-CV-0435 (GLS/DRH), 2006 WL 1133198, at *2, 2006 U.S. Dist. LEXIS 29739, at *5 (N.D.N.Y. Apr. 21, 2006) (dismissing plaintiff's complaint on initial review on statute of limitations grounds).

[5] *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644 (2010) (two-year discovery period commences running when plaintiff is aware of facts constituting § 10(b) violation, including scienter).

[6] The Court has taken judicial notice of documents filed in *In re Continental Broker-Dealer Corp.*, No. 8-04-85318-las (E.D.N.Y. Bankr. Ct.), in considering the statute of limitations question. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Feldman v. Lyons*, 852 F. Supp. 2d 274, 275 n.1 (N.D.N.Y. 2012) (noting in connection with an initial review under 28 U.S.C. § 1915(e) that "it is well established that a district court may rely on matters of public record in deciding whether to dismiss a complaint").

2011, and Plaintiff's motion was denied by text order entered on the docket on that date.

Plaintiff filed a second motion for the same relief on the grounds that "Samuel Zakarian violated New York Common Law breached his fiduciary duty. There is statutes 28 U.S.C. § 1658(b) for securities fraud. . . ." (No. 8-04-85318-las, Dkt. No. 264 at 1.) In his Motion/Memorandum in Opposition to Omnibus Objection to Claims and Motion Requesting Enforcement of Bar Date Orders (Late Filed Claims) filed with the second motion, Plaintiff acknowledged having complained to the Continental compliance officer about Defendant's lack of supervision and making unauthorized trades with unauthorized margins. *Id*. at 4. Plaintiff also noted that he had filed a proof of loss in the bankruptcy on July 27, 2011. *Id*. Following a hearing, Plaintiff's second motion was denied, and he was barred from filing any further motions seeking recovery from the Trustee's counsel. (No. 8-04-85318-las, Dkt. No. 266.) Plaintiff nonetheless continued filing motions even after the final decree was entered in the bankruptcy proceeding on May 23, 2005. (No. 8-04-85318-las, Dkt. Nos. 281, 284-85.) Plaintiff's most recent filing was a motion to reopen the bankruptcy proceeding, filed on April 4, 2014, and denied on June 19, 2014. (No. 8-04-85318-las, Dkt. Nos. 283 and 287.)

Plaintiff's filings in the Continental bankruptcy proceeding show that he was aware of Defendant's alleged misconduct in the handling of his Keogh account and had complained of Defendant's unauthorized trades and unauthorized use of margins to Defendant's employer at some time before he filed his motions in Bankruptcy Court.[7] The motions in Bankruptcy Court

---

[7] In an affidavit filed on the second motion, Plaintiff averred that the Continental compliance officer "received numerous complaints by me about broker Samuel Zakarian's lack of supervision and fact he made transactions without authorization as well as used margins without authorization." (No. 8-04-85318-las, Dkt. No. 264 at 5.)

were filed more than two years before Plaintiff commenced this action. Because Plaintiff was aware of Defendant's alleged securities laws violations more than two year before he commenced this action, his securities claim is also barred under the two years from discovery provision in § 1658(b).

Inasmuch as Plaintiff has failed to state a claim, and a claim would be barred by the statute of limitations in any event, the Court recommends that Plaintiff's SEA § 10(b) and Rule 10b-5 claim be dismissed.

###    C.    State Law Claims

Plaintiff has asserted claims against Defendant for "breach of fiduciary duty, churning, manipulations, non-disclosure, omission of facts, suitability, unauthorized activity, breach of contract, failure to supervise, margin calls, negligence, criminal misrepresentation, and fraudulent concealment doctrine." (Dkt. No. 1 at 1.) Inasmuch as Plaintiff has failed to state a civil rights claim under 42 U.S.C. § 1983 or a securities law claim under § 10(b) of the SEA or Rule 10b-5, the Court must examine whether diversity jurisdiction under 28 U.S.C. § 1332(a) exists over Plaintiff's state law claims. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) (federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction); *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973) (court is required to examine on its own whether diversity jurisdiction exists).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, exclusive of interest and costs, and must be between "(1) citizens of different states; (2) citizens of a State and citizens or subjects of a foreign state, except that district courts shall not have

original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State; (3) citizens of different states and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States."

The Court cannot determine with certainty whether there is diversity of citizenship from the facts alleged in the Complaint or Plaintiff's additional submissions in this case. The Complaint alleges that Plaintiff's address is in Latham, New York, and that Defendant's present address is in Armenia. (Dkt. No. 1 at 1.) In Plaintiff's subsequent correspondence to the Court, Plaintiff disclosed that Defendant "fled the United States to run away because he engaged in 1934 SEC Act violations and he became a fugitive disenfranchise doctrine." (Dkt. No. 11 at 1.) Papers related to Plaintiff's July 21, 2013, Financial Industry Regulating Authority ( FINRA) dispute resolution claim submitted with Plaintiff's Complaint reflect that as of the date of the claim Defendant's address was 71 Maxwell Lane, New Jersey. (Dkt. No. 1 at 7.)

If Plaintiff is a citizen of New York State, as appears to be the case, and Defendant is a citizen or subject of Armenia or citizen of the State of New Jersey, there is diversity of citizenship under § 1332(a). However, if Defendant is a United States citizen who fled to Armenia and is presently domiciled in Armenia, there is no diversity of citizenship because "United States citizens domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, so that § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (citation and internal quotation marks omitted).

Plaintiff claims compensatory damages of $53,000 and further claims he is entitled to treble his damages and recover $150,000. (Dkt. No. 1 at ¶ 5.) Therefore, whether the amount in controversy exceeds $75,000 depends on whether any of Plaintiff's state law claims provide for treble damages. *See A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) ("unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith"); *see also Brown v. New York State Supreme Court for the Second Judicial District*, 680 F. Supp. 2d 424, 429 (E.D.N.Y. 2010) ("[a] plaintiff may not rely upon a claim for damages that cannot be legally awarded under state law in order to meet the threshold amount").

Under New York State law, treble damages may not be awarded absent statutory authority. *See Springer v. Viking Press*, 457 N.Y.S.2d 246, 247 (1st Dep't 1982) (multiple or treble damages are not allowable in the absence of statute), *aff'd*, 470 N.Y.S.2d 579 (1983); *Zacma Cleaners Corp. v. Gimbel*, 540 N.Y.S.2d 268, 269 (2d Dep't 1989) (same). Plaintiff has not identified any statutory authority for treble damages on his state law claims in this case, nor has the Court found any statutes authorizing treble damages. Thus, Plaintiff's Complaint does not satisfy the $75,000 monetary threshold for diversity jurisdiction, leaving the Court without subject matter jurisdiction over his state law claims.[8] Therefore, the Court recommends that Plaintiff's state law claims be dismissed.

---

[8] Even if the Court had subject matter jurisdiction over Plaintiff's state law claims, it would be compelled to recommend dismissal because Plaintiff has failed to plead any facts giving his claims for breach of fiduciary duty, breach of contract, negligence, and fraud the facial plausibility required by *Iqbal.* Furthermore, there is no private right of action under the Martin Act, N.Y. General Business Law, § 352, *et seq.*,which regulates the purchase and sale of securities in New York State. *See CPC Int'l., Inc. v. McKesson Corp.*, 519 N.Y.S.2d 804, 807 (1987).

### D.    Leave to Amend

As noted above, a *pro se* litigant's complaint should not be dismissed without allowing a chance to amend when the complaint gives any indication that a plaintiff might be able to state a valid claim. *Gomez,* 171 F.3d at 795. However, no such opportunity is required when the problems with a plaintiff's complaint cannot be cured by a better pleading. *Cuoco*, 222 F.3d at 112.

#### 1.    Section 1983 Claim

It is clear from Plaintiff's Complaint that Defendant is being sued as a private actor and not a person acting under color of state law, and allowing Plaintiff to amend his claim under § 1983 would be futile. *See Ajamian v. Morgan Stanley Smith Barney*, No. 1:14-CV-306 (DNH/ATB), 2014 WL 2207983, at *5, 2014 U.S. Dist. LEXIS 72904, at *19 (N.D.N.Y. May 6, 2014) (recommending dismissal with prejudice of Plaintiff Ajamian's § 1983 claim against investment firm and stock broker defendants on 28 U.S.C. § 1915(e)(2)(B)(ii) review because defendants were not acting under color of state law), *accepting Report-Recommendation*, 2014 WL 2208125, 2014 U.S. Dist. LEXIS 72320 (May 28, 2014). In addition, Plaintiff's § 1983 claim, which arises out of Defendant's allegedly wrongful actions from 2002 to 2005 is also barred by the three year statute of limitations for § 1983 claims. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (claims brought under § 1983 are governed by a three-year statute of limitations). For the foregoing reasons, the Court recommends that dismissal of Plaintiff's § 1983 claim be with prejudice.

#### 2.    Claims under SEA § 10(b) and Rule 10b-5

The Court likewise finds that allowing Plaintiff the opportunity to amend his SEA § 10(b)

and Rule 10b-5 claims would be futile. Even in the unlikely event Plaintiff was able to amend his claim in a way that would satisfy the stringent pleading requirements imposed under Fed.R.Civ. P. 9(a) and the PSLRA, he could not overcome the bar imposed by the statute of limitations given his knowledge regarding his claims revealed in his filings in the Continental bankruptcy more than two years before he commenced this action. *See* 28 U.S.C. § 1658(b). Therefore, the Court recommends that Plaintiff's claims under SEA § 10(b) and Rule 10b-5 also be dismissed with prejudice.

3. <u>State Law Claims</u>

Finally, however unlikely, it is not totally inconceivable that Plaintiff could amend his Complaint to satisfy the pleading requirements for diversity jurisdiction and allege one or more facially plausible state law claims. Even if he could, however, Plaintiff would be unable to get around the bar of the statutes of limitations applicable to the claims identified in his Complaint.

Where the remedy sought on a breach of fiduciary duty claim is purely monetary, the action is one alleging injuries to property under N.Y. CPLR § 214(4), and the statute of limitations is three years. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 879 N.Y.S.2d 355, 359 (2009). When allegations of fraud are essential to a breach of fiduciary duty claim, courts have applied a six year statute of limitations under CPLR § 213(1).[9] *Id.* Regardless of whether the statute of limitations is three or six years, Plaintiff's claims dating back from 2002 to

---

  [9] Under New York law, CPLR § 213(8) applies to breach of fiduciary duty claims where the breach was perpetrated largely through fraud. Section 213(8) provides for a statute of limitations of six years from the date of the fraud or two years from the date of discovery, or when plaintiff should reasonably have discovered the breach. *See IDT Corp.,* 879 N.Y.S.2d at 359. Inasmuch as Plaintiff's filings in the Continental bankruptcy proceeding reveal that he discovered the alleged breach more than two years before commencing this action, Plaintiff's claim is barred even under the two years from discovery provision.

2005 are time barred.[10]

Under New York law, Plaintiff's breach of contract claim is governed by six-year statute of limitations. *See* CPLR § 213(2); *Gibraltar Mgt. Co., Inc. v. Grand Entrance Gates, Ltd.*, 848 N.Y.S.2d 684, 686 (2d Dep't 2007). Generally, the statute of limitations accrues at the time of the breach. *Hahn Automotive Warehouse, Inc. v. American Zurich Ins. Co.*, 944 N.Y.S.2d 742, (2012). The statute of limitations on Plaintiff's breach of contract claim involving Defendant's conduct from 2002 to 2005 has clearly run, and the claim is time barred.

The statute of limitations for negligence under New York law is three years. *See* CPLR § 214(4); *Cator v. Bauman*, 833 N.Y.S.2d 811, 812 (4th Dep't 2007) (three-year statute of limitations on plaintiff's negligence claim against stock broker). Therefore, Plaintiff's negligence claim against Defendant is also clearly barred by the statute of limitations.

CPLR § 213(8), setting forth the New York statute of limitations for a fraud claim, provides that "an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."[11] CPLR § 213(8) (2014). A plaintiff bears the

---

[10] As a general rule, no fiduciary duty arises from an ordinary broker-client relationship. *See Apt v. Sengupta*, 981 N.Y.S.2d 680, 681 (1st Dep't 2014).

[11] Plaintiff has alleged a state law claim under the "fraudulent concealment doctrine" in his Complaint. (Dkt. No. 1 at 1.) Fraudulent concealment – inducing plaintiff to refrain from filing a timely action by fraud, misrepresentation or deception – while not a distinct cause of action, can result in a defendant being estopped from asserting a statute of limitations defense. *See Kaufman v. Cohen*, 760 N.Y.S.2d 157, 167 (1st Dep't 2003) (equitable estoppel "requires proof that the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that reliance caused plaintiff to delay bringing timely action"). Equitable estoppel does not apply

burden of establishing that he or she could not, with reasonable diligence, have discovered the fraud earlier than two years before commencing the action. *See Sabbatini v. Galati*, 842 N.Y.S.2d 539, 543 (2d Dep't 2007) (citing *Lefkowitz v. Appelbaum*, 685 N.Y.S.2d 460, 461 (2d Dep't 1999).

As with Plaintiff's claims under SEA § 10(b) and his claim for breach of fiduciary duty, his filings in the Continental bankruptcy reveal that discovered Defendant's alleged fraud more than two years before commencing this action. Therefore, Plaintiff's fraud claim is also barred by the statute of limitations, and the Court recommends that those claims be dismissed with prejudice.

### E.  Motion for Appointment of Counsel

Plaintiff has moved for appointment of counsel. (Dkt. No. 17.) Even if the Court were not recommending dismissal of Plaintiff's Complaint with prejudice, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Therefore, the motion is denied. The denial is without prejudice so that Plaintiff will not be

---

where "the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive cause of action." *Id.* The rule applies to fraud claims. There are no allegations in Plaintiff's Complaint suggesting any act of concealment by Defendant independent of the alleged fraud in handling Plaintiff's Keogh account, or delay by Plaintiff in commencing the lawsuit in reliance upon such a misrepresentation or concealment. Construing the Complaint liberally as must be done in light of Plaintiff's *pro se* status, the Court has interpreted Plaintiff's claim as one for fraud on Defendant's part and applied the statute of limitations for fraud.

precluded from making a subsequent motion for appointment of counsel in the event the District Court allows the action to proceed.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 6) is **GRANTED FOR PURPOSES OF FILING ONLY**; and it is

**ORDERED**, that Plaintiff's first application to proceed *in forma pauperis* (Dkt. No. 5) is **DENIED AS MOOT**; and it is further

**RECOMMENDED**, that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is

**ORDERED**, that Plaintiff's motion for appointment of counsel (Dkt. No. 17) is **DENIED WITHOUT PREJUDICE**; and it is

**ORDERED**, that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 11, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2014 WL 2207983
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Robert H. AJAMIAN, Plaintiff,
v.
Morgan Stanley Smith BARNEY, et al.,
Defendants.

No. 1:14–CV–306 (DNH/ATB). | Signed May 6,
2014.

**Attorneys and Law Firms**

Robert H. Ajamian, pro se.

**Opinion**

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** The Clerk has sent to the court a complaint filed on a form for civil rights actions pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Robert Ajamian. (Dkt.Nos.1, 2).

**I.** *IFP Application*

When plaintiff first submitted his complaint, the IFP application was incomplete. On March 26, 2014, this court administratively closed this case, but gave plaintiff the opportunity to comply with the filing fee requirement or submit a properly completed IFP application. (Dkt. No. 3). Plaintiff has re-filed his motion to proceed IFP, and the Clerk has reopened the action for this court's review. (Dkt. No. 4 & Text Order of March 28, 2014).

A review of plaintiff's new IFP application shows that he has still failed to answer critical questions associated with his income. (Dkt. No. 4) (IFP Application, Question 3). In his first application, plaintiff indicated that he was not employed, but when asked if he has received "Other Income" in the past twelve months, he left that section totally blank. (Dkt. No. 2, Question 3). He was required to answer either "Yes" or "No" to a question that asked whether he received income from a series of different

sources of income. (*Id.*) In his new application, he has checked "No" for every source of income, making it impossible to determine how he is able to pay for food or shelter. (Dkt. No. 4, Question 3) Although plaintiff has now answered all of the questions on the form to a certain extent, some of his answers do not make sense.[1]

However, the court will not detail all the concerns it continues to have with plaintiff's application. Notwithstanding plaintiff's failure to properly complete the IFP application, the court will continue its analysis of the complaint, because even if plaintiff had properly completed the IFP application, the case would have to be dismissed. Thus, the court will proceed to a consideration of the merits and will grant IFP for purposes of filing only.

**II.** *Merits*

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

**\*2** To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))."Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."*Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

### III. *Jurisdiction*

#### A. Legal Standards

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry,* No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler,* ––––U.S. ––––, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012); *Henderson ex rel. Henderson v. Shinseki,* ––– U.S. ––––, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011)). Federal courts are mandated to sua sponte examine their own jurisdiction at every stage of the litigation. *Id.*

When a plaintiff is pro se, the court must interpret the complaint liberally.*Sealed Plaintiff v. Sealed Defendants,* 537 F.3d 185, 191 (2d Cir.2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

#### B. Application

Although plaintiff in this case has used the form for civil rights complaints under section 1983, and the body of the complaint only claims alleged violations of his "constitutional rights," the Civil Cover Sheet contains check marks on various boxes indicating that the action may be based on "Diversity" or "Other Fraud" in the "Torts" section of the form, as well as "Other Civil Rights," "Arbitration," and "Constitutionality of State Statutes ." (Dkt. No. 1–1). Thus, the court will consider if there are other possible bases for plaintiff's assertion of jurisdiction.[2]

#### 1. Federal Question Jurisdiction

#### a. Section 1983

Federal question jurisdiction pursuant to 28 U.S.C. § 1331

provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States."28 U.S.C. § 1331. Plaintiff has filed this case, using a form for civil rights actions under 42 U.S.C. § 1983. To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk,* 693 F.Supp.2d 217, 223 (E.D.N.Y.2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York,* No. 12 Civ. 4699, 2013 WL 2311837, at *5–6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi,* No. 07–CV–6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson,* 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). Private conduct is simply beyond the reach of section 1983" 'no matter how discriminatory or wrongful" that conduct may be."*Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state.*Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.2003) (citations omitted).

*3 Plaintiff in this case claims that Morgan Stanley Smith Barney ("MSSB") and plaintiff's stock broker, Edward Dominquez, have violated plaintiff's "constitutional rights to [a] conservative safe Keough retirement account from 2000–2002."(Complaint ("Compl.") at ¶ 4) (Dkt. No. 1). Plaintiff claims that on January 11, 2007, a mediation took place regarding this issue, but that the parties to the mediation were not "neutral." (*Id.*) In his causes of action, plaintiff seems to claim that his "constitutional" rights to safe and conservative investments were violated because, instead of investing in Black Rock Mutual Funds, defendant Dominquez had a conflict of interest and promoted "Morgan Stanley" Brand A & B Funds that were "overpriced to make commissions for himself."(*Id.* ¶ 5) (Causes of Action). Plaintiff's third cause of action[3] states that MSSB "manipulated" the January 11, 2007 mediation. (*Id.*) Plaintiff states that he "declares [the] contract null and void," and that his constitutional rights

were further violated because he was not allowed to properly present his case to a neutral panel. (*Id.*)

There is no allegation anywhere in the complaint that either of the named defendants were state actors or conspired with state actors to violate plaintiff's rights. Mr. Dominquez is clearly a private individual, and MSSB is a private investment company. There are no allegations that either defendant acted under color of state law in dealing with plaintiff. *See Baum v. Northern Dutchess Hospital,* 764 F.Supp.2d 410, 419 (N.D.N.Y.2011) (private conduct is generally beyond the reach of § 1983) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assn.,* 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)); *Weinraub v. Glen Rauch Securities, Inc.,* 399 F.Supp.2d 454, 463 (S.D.N.Y.2005) (securities arbitrators do not act under color of state law for purposes of § 1983), *aff'd,*180 F. App'x 233 (2d Cir.2006).*See also Delahoussaye v. Physical Review Letters PRX Journal,* No. 13–CV–4603, 2013 WL 5744511, at *2 (E.D.N.Y. Oct.23, 2013) (dismissing an action brought under § 1983 against a private company for lack of jurisdiction); *Maxineau v. City Auto Body of Valley Stream,* No. 13–CV–4093, 2013 WL 4520470, at *2 (E.D.N.Y. Aug.2013) (same).

It appears that plaintiff is unhappy with the way that his money was invested by Mr. Dominquez and his employer MSSB. A private corporate entity such as MSSB is deemed a state actor "only if" the government created the entity by special law; the government retains permanent authority to appoint a majority of the directors of the corporation; or there is a close nexus between the State and the challenged action of the entity as though the action of the private company may be fairly treated as an action by the State itself. *Baum,* 764 F.Supp.2d at 419 (citation omitted).

Very liberally interpreted, this case is similar to *Weinraub* case from the Southern District of New York. In *Weinraub,* the plaintiff alleged that the stock broker defendants mismanaged his margin account and gave him faulty investment advise in violation of federal securities laws. 399 F.Supp.2d at 461. Weinraub also named the arbitrators,[4] who he alleged improperly precluded evidence at his arbitration hearing. *Id.* at 463.Mr. Weinraub raised a variety of claims, and the court specifically held that neither the arbitrators, nor the National Association of Securities Dealers ("NASD")[5] acted under color of state law, dismissing any claims under section 1983. Thus, in this case, plaintiff's claims, to the extent that he is attempting to bring a section 1983 claim may be dismissed for lack of state action.[6]

**b. Securities Laws**

**\*4** In *Weinraub,* after noting that the plaintiff asserted "a plethora of federal and state-law claims," the court interpreted plaintiff's mismanagement claims as being brought under the Securities and Exchange Act ("SEA").399 F.Supp.2d at 455, 461–62. Claims of securities fraud must meet the heightened pleading requirements in Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA").*Richman v. Goldman Sachs Group, Inc.,* 868 F.Supp.2d 261, 271 (S.D.N.Y.2012) (citing Fed.R.Civ.P. 9(b); *ASTI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 89 (2d Cir.2007); 15 U.S.C. § 78u–4(b)(1)). Section 10(b) of the SEA prohibits any person from using any manipulative or deceptive device or contrivance "in contravention of SEC rules." *Id.* (citing 15 U.S.C. § 78j(b); Rule 10b–5). To state a claim under section 10(b) and Rule 10b–5, the plaintiff must prove (1) a material misrepresentation or omission by defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance by plaintiff upon the misrepresentation; (5) economic loss; and (6) loss causation. *Id.* (citing *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008)); 17 C.F.R. § 240.10b–5. To plead scienter, the complaint must allege facts with particularity to show that the defendant had an opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness. *Alki Partners, LP v. Vatas Holding GmbH,* 769 F.Supp.2d 478, 493–94 (S.D.N.Y.2011) (citations omitted).

Plaintiff in this case claims that his stock broker sold him "overpriced" MSSB stocks instead of safe, "conservative" mutual funds for the sole purpose of getting his commission. Plaintiff states that the arbitration[7] was in 2007. However, he has attached to his complaint a dispute resolution claim that he apparently submitted to FINRA on September 19, 2013, alleging Breach of Fiduciary Duty; Manipulations; Misrepresentation/Non–Disclosures; Omission of Facts; Suitability; Unauthorized Trading; Breach of Contract; Failure to Supervise; and Negligence. (Compl. at CMECF p. 7). These "allegations" merely appear in a list without any explanation, and it is unclear how a claim submitted in 2013 relates to his arbitration in 2007, in which he alleges that he was not allowed to present evidence to a "neutral panel." Thus, the court is stretching to determine any claims that plaintiff may be trying to make, further evidence that plaintiff has not alleged anything with "particularity."[8]

The court in *Weinraub* also dismissed the plaintiff's claim based on the statute of limitations. Weinraub claimed that

the mismanagement took place in 2000. This plaintiff claims that the illegal conduct took place from 2000 to 2002, and that his "mediation" took place on January 11, 2007. The current[9] limitations period for a securities fraud claim is *the earlier of* two years from the discovery of facts underlying the violation or within five years of the violation. 28 U.S.C. § 1658(b) (repealing the former statute of limitations found within the SEA in 15 U.S.C. § 78i(e)). In *Weinraub,* the court applied the previous statute because the statute of limitations ran prior to the new law being enacted. 399 F.Supp.2d at 462 n. 66. The court stated that the "latest" that plaintiff could have discovered the pertinent facts was in June of 2002, when he began his arbitration proceeding. *Id.* at 462.Weinraub brought his federal action in 2005, long beyond either time limit, and the court found that Weinraub's securities fraud claim was also barred by the statute of limitations.

**\*5** In this case, plaintiff claims that the defendants' actions took place between 2000 and 2002, and he brought the arbitration proceeding in 2007. Thus, the court will give plaintiff the benefit of the newer statute of limitations. It has been held that the two year period is a statute of limitations, while the five-year time limit is known as a "statute of repose." *Marini v. Adamo,* No. 08–Cv–3995, 2014 WL 465036, at *19–20 (E.D.N.Y. Feb.6, 2014). A statute of repose defines the right involved in terms of the time allowed to bring suit.*Id.* at *20 (citing *Stoltz Family P'ship L.P. v. Daum,* 355 F.2d 92, 102 (2d Cir.2004)). Thus, a statute of repose begins to run "without interruption once the necessary triggering event has occurred even if equitable considerations would warrant tolling or even if plaintiff has not yet, or could not yet have, discovered that [he] has a cause of action."*Id.* (citing *Stoltz,* 355 F.3d at 102–103). In *Marini,* after analyzing what was "unsettled law," the court also held that the "continuing violations doctrine" does not apply to this statute of repose. *Id.* at *20–21.In *Stoltz,* the Second Circuit stated that a statute of repose does not "bar" a cause of action, rather, it prevents what might otherwise be a cause of action from ever arising. 355 F.3d at 103. *See also Police and Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.,* 721 F.3d 95, 106–107 (2d Cir.2013) (discussing statutes of repose in securities litigation).

In this case, giving plaintiff all benefit of the doubt, he was certainly aware of his claims when he went through his "mediation" proceeding in 2007, but plaintiff alleges that the violation occurred between 2000 and 2002. (Compl. at 2). Five years from the date of the violation would have been 2007. As stated above, the five years would have run regardless of whether plaintiff was even aware of the violation. Plaintiff filed this action on March

21, 2014, long after the statute of limitations and/or the statute of repose ran. According to the attachment to the complaint, plaintiff seems to have recently filed another request for arbitration in 2013. However, this would not revive a claim whose statute of limitations has already run. He makes claims relating to the 2007 arbitration (although he does not and cannot sue the arbitrators).[10] Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that plaintiff himself submitted. *Messeroux v. Maimonides Medical Center,* No. 11–CV–5343, 2013 WL 2414690, at *1 (E.D.N.Y. May 31, 2013) (citing *Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980)).

The court also notes that this is not the only case plaintiff has brought with respect to his alleged investments. He has two other civil actions in this district in which he claims that his money was improperly invested.[11] *See Ajamian v. Nimeh,* No. 1:14–CV–320 (GTS/CFH) (filed 3/24/14) (administratively closed for failure to properly complete the IFP application) and *Ajamian v. Zakarian,* No. 1:14–CV–321 (DNH/TWD) (filed 3/24/14).

### IV. *Opportunity to Amend*

#### A. Legal Standard
**\*6** Generally, when the court dismisses a pro se complaint *sua sponte,* the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile.*Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

#### B. Application
In this case, the court finds that any attempt by plaintiff to amend his complaint would be futile. Plaintiff cannot bring a claim under section 1983 because neither defendant acted under color of state law. There is no way that plaintiff would be able to revive a claim from 2000 to 2002 or even from 2007 under the SEA, in which plaintiff alleges that his assets were mismanaged.[12] Thus, this court will recommend dismissing plaintiff's action sua sponte with prejudice.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's renewed motion to proceed IFP (Dkt. No. 4) is **GRANTED FOR PURPOSES OF FILING ONLY,** and it is

**RECOMMENDED,** that this action be **DISMISSED SUA SPONTE WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and it is

**ORDERED,** that the Clerk of the Court serve a copy of this Order and Report–Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Footnotes

1    One of the questions asks whether plaintiff owns any automobile, real estate, stock, bond, security, trust, jewelry, or other financial instrument or thing of value held in someone else's name. (IFP Application, Question 5). Plaintiff originally left this question blank. Now he states that he only owns a car. Since this action is about a retirement account and stock owned by plaintiff, it is odd that there is no reference to any retirement account. The court also notes that in the IFP application, plaintiff states that his disabled brother depends upon plaintiff for support, but if plaintiff has no income, it is unclear how he is "supporting" his disabled brother.

2    The Civil Cover Sheet also has a section entitled "Origin." Within this section plaintiff has checked a box stating that the action was "Transferred from Another District." (Dkt. No. 1–1). Where plaintiff is asked to "specify," it appears that he has listed the "Arbitration" case number. (*Id.*) Clearly, this case has not been transferred from another federal district court, and it is an original action.

3    Plaintiff's second cause of action lists only the "damages" that plaintiff identified ($42,000.00 that were "trebled" to $126,000.00). (Compl. ¶ 5, Second Cause of Action).

4    Plaintiff in this case has not named any arbitrators, and this would be another basis for dismissing any claims relating to any arbitration proceeding alleging that plaintiff was not allowed to present evidence of his claims.

5    On July 26, 2007, the Securities and Exchange Commission approved the consolidation of the regulator functions of the New York Stock Exchange and the NASD into a single entity, known as FINRA. *DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ. 318, 2009 WL 2242605, at *5 n. 9 (S.D.N.Y. July 27, 2009) (citation omitted).

6    The court would also note that it is unaware of any constitutional right to a conservative, safe, Keough Retirement Account.

7    Plaintiff refers to the arbitration as his "mediation."

8    There is a private right of action under the SEA, but it is very clear that when claiming misleading statements or omissions, the complaint must specify each statement alleged to be misleading, the reasons why it was misleading, and if the claim is based on "information and belief," the complaint must state specifically all facts upon which that belief is formed. 15 U.S.C. § 78u–4(b) (1).

9    The previous statute of limitations was shorter, and required that the action be brought within one year of the discovery of facts necessary for the claim or within three years of the occurrence. 399 F.Supp.2d at 462 n. 66 (citing former 15 U.S.C. § 78i(e)). The previous statute was repealed by implication when the Public Accounting Reform and Investor Protection Act of 2002 ("Sarbanes–Oxley") was passed, which lengthened the statute of limitations to what it is today.

10    The court in *Weinraub* stated that the arbitrators were not state actors for purposes of section 1983, and they would not be liable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, because the FAA does not create an independent basis for federal-question jurisdiction. 399 F.Supp.2d at 463 & n. 74. This court notes that the arbitrators were not involved in the securities transaction at issue, thus would not be liable under the SEA. The court in *Weinraub* also held that any supplemental state law claims against the arbitrators would be barred by the doctrine of "arbitral immunity." *Id.* at 464 & n. 80 (citing, *inter alia, Austern v. Chicago Bd. of Options Exch., Inc.,* 898 F.2d 882, 886 (2d Cir.1990)). Plaintiff also states that defendant Morgan Stanley "manipulated" the mediation. However, it is unclear how Morgan Stanley "manipulated" the mediation/arbitration, and it appears that plaintiff is simply unhappy with how the mediation was conducted.

11    Plaintiff also has an unrelated civil action in which he has sued the entire Supreme Court Appellate Division, Third

Department.*Ajamian v. State of New York*, No. 1:13–CV–1316 (MAD/TWD).

12    The court would also note that the statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5).*Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2004). Thus, even if the defendants had acted under color of state law, and plaintiff had some sort of constitutional right, the statute of limitations would have run in this case, whether the cause of action accrued in 2002 or 2007.

---

**End of Document**        © 2014 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1133198
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

George MERCIER, Plaintiff,
v.
George PATAKI, and Thomas Voelkle,
Defendants.

No. 1:06-CV-0435 (GLS)(DRH). | April 21, 2006.

**Attorneys and Law Firms**

George Mercier, Plaintiff, pro se.

**Opinion**

### *DECISION & ORDER*

GARY L. SHARPE, District Judge.

**\*1** Presently before the Court is a complaint alleging a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), filed by Plaintiff George Mercier.[1]Dkt. No. 1. Plaintiff, a resident of Nevada, also filed an application to proceed *in forma pauperis.*Dkt. No. 2. Plaintiff has not paid the statutory filing fee for this action.

For the reasons stated below, Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted.

### I. Background

In his complaint, Plaintiff claims that in 1995, Defendant Pataki, the Governor of New York, and Defendant Voelkle, the Chief of Police of Brighton, New York, conspired to steal, and to try to have Plaintiff "put away." Dkt. No. 1, Complaint at ¶ 1. Plaintiff alleges that "Yesterday, a visible effect of that agreement surfaced" when Plaintiff returned to his apartment complex and observed an individual from maintenance removing items from an apartment.*Id.* at ¶ 2. Plaintiff apparently claims that this individual has stolen various items from Plaintiff's apartment.[2]*Id.* at p. 3. Plaintiff seeks the return of the alleged stolen objects. *Id.* at p. 5. For a complete statement of Plaintiff's claims, reference is made to the

complaint.

### II. Discussion

Consideration of whether a *pro se* plaintiff should be permitted to proceed *in forma pauperis* is a two-step process. First, the court must determine whether the plaintiff may commence the action without prepaying, in full, the $250.00 filing fee. The court must then consider whether the causes of action stated in the complaint are frivolous or malicious, or if they fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). The Second Circuit has held that dismissal is also appropriate when an affirmative defense, such as the statute of limitations, is plain from the plaintiff's pleadings. *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995).

In this case, the Court has determined that Plaintiff has satisfied the test of economic need and would be financially eligible to proceed *in forma pauperis. See* Dkt. No. 2.

Turning to the second inquiry, Plaintiff filed a complaint alleging a claim under *Bivens. Bivens* actions, although not precisely parallel, are the analog to a 42 U.S.C. § 1983 action against state actors,[3] and the constitutional standard of review is the same for either type of action. *See Chin v. Bowen,* 833 F .2d 21, 24 (2d Cir.1987) (noting that there is a "general trend in the appellate courts" to incorporate § 1983 law into *Bivens* cases) (citation omitted); *see also Lombard v. Board of Education,* 784 F.Supp. 1029, 1036 (E.D.N.Y.1992) (same).*Bivens* actions, as well as actions brought under § 1983, are subject to a three-year statute of limitations. *Platsky v. Studeman et al.,* 829 F.Supp. 567, 570 (E.D.N.Y.1993) (citations omitted). Here, Plaintiff has named only state officials as Defendants and does not allege any wrongdoing on the part of any federal officials. Thus, the Court deems this matter as seeking relief pursuant to § 1983.

**\*2** The "applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years ."*Pinaud v. County of Sufolk,* 52 F.3d 1139, 1156 (2d Cir.1995). In *Pino v. Ryan,* the Second Circuit noted that "ordinarily" the court should not raise the statute of limitations *sua sponte,* however, it was appropriate where the injuries complained of occurred more than five years prior to the filing of the complaint and there were *no* applicable tolling provisions as a matter of law. 49 F.3d at 54.

In this case, as noted, Plaintiff claims that in 1995, Defendants Pataki and Voelkle conspired to steal, and to try to have Plaintiff "put away." Dkt. No. 1, Complaint at ¶ 1. Thus, the alleged conspiracy occurred, if at all, during or before 1995, which is more than **ten** years before this complaint was filed. It appears that Plaintiff was not subject to any alleged continuing violation(s), and there are no events which would toll the statute of limitations. Plaintiff's claims are therefore time-barred.

Since Plaintiff's claims are barred by the applicable statute of limitations, Plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because the complaint fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915.

Plaintiff's remaining claims relate to alleged thefts that occurred in his apartment in Las Vegas, Nevada. Las Vegas is in the District of Nevada. Thus, if the case was not subject to dismissal based on the statute of limitations, it would have been transferred to the District of Nevada.

WHEREFORE, it is hereby

ORDERED, that Plaintiff's application to proceed *in forma pauperis* is GRANTED, and it is further

ORDERED, that this action is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B) for the reasons stated above, and it is further

ORDERED, that the Clerk serve a copy of this Order on Plaintiff.

It is hereby certified that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

Footnotes

1    The Court notes that Plaintiff previously filed two other actions in this District. *See Mercier v. Central Intelligence Agency, et al.,* 5:04-CV-0429 (NAM)(GJD); *Mercier v. The Governor of the State of New York,* 1:06-CV0350 (GLS)(DRH). In both cases, the complaint was dismissed for failure to state a claim upon which relief may be granted. *See* 5:04-CV-0429, Dkt. No. 3; 1:06-CV-0350, Dkt. No. 3.

2    Plaintiff claims that "[o]ver the years, items stolen have been underwear, blueberries [sic], credit card files, business correspondence, Federal Court files, some hardware and tools, air conditioning supplies, tax forms and correspondence ... [and] two occupational business licenses."Dkt. No. 1, Complaint at p. 3. Plaintiff also claims that he is missing his "IRAQ and OPEC files," which Plaintiff claims "were background files designed to start the draftsmanship of two books."*Id.*

3    42 U.S.C. § 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (§ 1983"is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.") (citation omitted).

---

2010 WL 502948
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Aimee O'NEIL and M.O., Plaintiffs,
v.
Catherine BEBEE; and Oswego City School District, Defendants.

No. 5:09–CV–1133 (GTS/DEP). | Feb. 10, 2010.

**Attorneys and Law Firms**

Amy O'Neil, Minetto, NY, pro se.

**Opinion**

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this a *pro se* civil rights action filed by Aimee O'Neil ("Plaintiff") is her motion to proceed *in forma pauperis,* her motion for a stay, and her two separate letter requests. (Dkt. Nos. 1, 2, 3, 4, and 5.) For the reasons discussed below, Plaintiff's motion to proceed *in forma pauperis* is granted; her Complaint is *sua sponte* dismissed with prejudice due to its frivolous, pursuant to 28 U.S.C. § 1915(e) (2)(B); her motion for a stay and two letter requests are denied as moot; and she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why the Court should not issue an Order prohibiting her from filing any future *pro se* actions in this Court without prior leave of the Court.

## I. PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*

After carefully reviewing Plaintiff's papers in support of her motion to proceed in forma pauperis, the Court finds that she qualifies for *in forma pauperis* status. (*See* Dkt. No. 2.) As a result, the Court grants Plaintiff's motion to proceed *in forma pauperis.*[1]

## II. REVIEW OF PLAINTIFF'S COMPLAINT

### A. Court's Duty to *Sua Sponte* Review Complaint

Pursuant to 28 U.S.C. § 1915(e), when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B).[2] Thus, there is a responsibility on the Court to determine that a complaint may be properly maintained in the District before it may permit a plaintiff to proceed with an action *in forma pauperis. Id.*

In determining whether an action is frivolous, the Court must look to see whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the Court has a duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the Court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis* in order to prevent abuses of the process of the Court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as discourage the waste of judicial resources.

### C. Legal Standard Governing Dismissals for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211, nn. 15-16 (N.D.N.Y.2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

**\*2** With regard to the first ground, Fed.R.Civ.P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that

"give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n. 18 [citations omitted].[3]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n. 22 [citations omitted]; *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id* . at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted].[4]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[5] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court

stated, "*Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[6]

**\*3** Finally, in reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[7] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards in Fed.R.Civ.P. 8, 10 and 12.[8] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10, and 12 are procedural rules that even *pro se* civil rights plaintiff must follow.[9] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].

### C. Summary of Plaintiff's Complaint

On October 8, 2009, Plaintiff filed her Complaint in this action. (Dkt. No. 1.) The text in the body of the Complaint is single spaced, and its pages are unnumbered. (*Id.*) In only four of the twelve pages (specifically, pages two through five) of the Complaint does Plaintiff make any attempt at numbering paragraphs. (*Id.* at 2-5.) Even when she does so, she does not number the paragraphs consecutively. (*Id.*) Most of the paragraphs are not limited as far as practicable to a single set of circumstances, but extend to numerous sets of circumstances. (*Id.* at 4-10.) In the caption, Plaintiff names herself, as well as her daughter, M.O., as Plaintiffs in the action, and Catherine Bebee and the Oswego City Schools as the Defendants in the action. (*Id.* at 1.) However, in the body of the Complaint, Plaintiff identifies a host of other Defendants, at one point also seemingly naming M.O. as a Defendant.

*(Id.* at 3-12.)

With regard to her claims, construed with the utmost of special leniency, Plaintiff has commenced this action pursuant to 42 U.S.C. § 1983, asserting several civil rights violations. (Dkt. No. 1, Attach. 1 [Civil Cover Sheet].) As summarized by Plaintiff, for example, her claims encompass "tax evasion, fraud, perjury, libel, defamation, intentional infliction of emotional distress, malpractice, negligence, invasion of privacy, violation of unlawful search and seizure, deprivation of due process, and violation of equal rights under the law ... based upon section U.S. 42 section 1983 and 1876.... "[10] (Dkt. No. 1 at 10.)

In support of these claims, Plaintiff asserts factual allegations regarding a broad range of events occurring from the summer of 2000 to the spring of 2001, including (but not limited to) conspiracy, bribery, kidnaping, and perjury by a social worker. (*See generally*Dkt. No. 1.) More specifically, Plaintiff alleges that, between approximately August of 2000 and April of 2001, Defendant Bebee, a social worker employed by the Oswego City School District, (1) conspired with six other individuals (including members of "the Baker family," who presumably reside in or near Oswego, New York) to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, where she was receiving orthopedic medical treatment from Dr. Sheila Love, and transport her to New York, and then (2) perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (*Id.*)

**\*4** Plaintiff further alleges that, in carrying out this conspiracy, Defendant Bebee committed the following acts: (1) she acted at the behest, and/or for the benefit of, Plaintiff's ex-husband (apparently named William Wallace), who purports to be the father of Plaintiff's daughter but who has not proved his paternity; (2) she accepted a bribe of one hundred thousand dollars ($100,000) from someone in, or associated with, the Baker family, which she intended to use for the purpose of a transgender operation; (3) she invaded Plaintiff's privacy by relying on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, and by causing Plaintiff's home to be searched illegally; (4) she not only kidnaped Plaintiff's daughter but her two other children, whom she smuggled to a third state before bringing them to New York; (5) she falsely accused Plaintiff of child abuse; (6) she helped to somehow restrict Plaintiff's parental rights in court through use of fraud, slander and due process violations; and (7) she caused Plaintiff's daughter to be placed with the Baker

family in New York, against the recommendation of her daughter's pediatrician. (*Id.*)

As relief, Plaintiff demands $1,000,000.00 in compensatory and punitive damages. (*Id.* at 12.)

**D. Analysis of Complaint**

As an initial matter, the Court notes that the form of Plaintiff's Complaint violates several federal and local rules. *See, e.g.,*Fed.R.Civ.P. 10(a) (requiring caption to name all defendants); Fed.R.Civ.P. 10(b) (requiring that all paragraphs be numbered sequentially, and that each paragraph be limited as far as practicable to a single set of circumstances); N.D.N.Y. L.R. 10.1(a) (requiring text in body of complaint to be double-spaced, and pages to be consecutively numbered). However, in light of the special solicitude that should ordinarily be afforded *pro se* litigants (and because these rule violations pale in comparison to Plaintiff's other pleading deficiencies, described below), the Court will overlook these rule violations. The Court does this with some hesitancy, given Plaintiff's familiarity with the pleading requirements established the local and federal rules, due to her extraordinary litigiousness (*see, infra,* Part IV of this Decision and Order).

The Court notes also that Plaintiff has filed this action not only on her own behalf, but apparently on behalf of her child, M.O., who is a minor. (*See*Dkt. No. 1, at 3; Dkt. No. 2, at 2 [listing M.O. as a dependent].) As Plaintiff previously has been repeatedly advised, M.O. may not proceed on her own behalf. *See*Fed.R.Civ.P. 17(c).[11] Nor is a *"pro se"* non-attorney permitted to represent another person in federal court litigation. *Berrios v. New York City Housing Auth.,* 564 F.3d 130, 132-133 (2d Cir.2009). Accordingly, M.O. is dismissed as a Plaintiff in this action.

With regard to Plaintiff's claims, many of the the factual allegations throughout the Complaint are conclusory, unsubstantiated and rambling; and there are few detailed allegations clearly identifying individual(s), dates, and specific acts of the asserted misconduct forming the basis for alleged constitutional violations. Succinctly stated, the manner in which Plaintiff has set forth her claims is not short and plain, but so verbose, disjointed, vague and confusing that it is nearly impossible for the Court to assess them, and surely impossible for the Defendants to respond to them and prepare for trial.[12] However, in an extension of special solicitude to Plaintiff, and an effort to provide a more detailed explanation as to why Plaintiff's Complaint is frivolous, the Court will attempt to address the bulk of Plaintiff's claims in more detail.

**1. Section 1983 Pleading Requirements**

**\*5** Generally, to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person or entity acting under color of state law and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (quoting *West v. Atkins,* 487 U.S. 42, 48 [1988] ).

**a. Person or Entity**
State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 95-CV-1500, 1995 WL 743719, at \*2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (McAvoy, C.J.) [citation omitted] ). It is the plaintiff's duty to allege state action on the part of the defendants named in a complaint; and a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus. *See, e.g., Jenkins v. Murphy,* 08-CV-0921, 2008 WL 4596197, at \*2 (N.D.N.Y. Oct. 14, 2008) (McCurn, J.) [collecting cases]; *Humphrey v. Rescue Mission,* 05-CV-0795, 2005 WL 1661826, at \*2 (N.D.N.Y. July 14, 2005) (Mordue, J.) [collecting cases].[13]

Here, the action is brought against Catherine Bebee and her employer, the Oswego City Schools. Examples of Plaintiff's allegations against Bebee are as follows:

> D. Invasion of privacy-Catherine Bebee violated, denied, and /or abridged, my privacy under the colors of state laws by misusing and abusing her job position and leaving her jurisdiction, *Freeman v. Rideout,* 808 F 2d 949 (2d Cir.1986).

> 3. Negligence-because Catherine Bebee failed to verify the validity of a court order, paternity order, and her own job duties before leaving the state of New York, Catherine Bebee is also negligent because the injury to [M.O.] was unfounded and legally sealed, in which Catherine Bebee, a social worker, has total access to a founded or unfounded report, and even if it was founded, it does not entitle Catherine Bebee to travel to the State of Florida as the state of Florida, in their own jurisdiction, has their own social workers, to handle their own investigations based upon findings of Dr. Sheila Love, as Sheila Love was assigned to treat

patient [M.O.] Catherine Bebee is not assigned, she has no jurisdiction over [M.O.] and there needs to be a clear, definitive ruling stating Catherine Bebee has no jurisdictional authority over said child, and will never have any. It is very important to establish this factor, because the pattern of retaliation is only continuing so said child cannot attend public school....

(Dkt. No. 1, at 3-4.)

> Catherine Bebee, while under oath, under the penalties of perjury, in front of Judge James McCarthy, stated she was paid a large sum of money to travel to Florida and take said children after a careful conspiracy and several meetings to carefully plan out this act. Catherine Bebee stated she was paid an excessive $100,000.00 and was going to use this money for the purpose a transgender operation, in which she felt entitled to undertake by causing trauma and harm to my home and my family.

**\*6** (Dkt. No. 1, at 5.)

For the sake of brevity, the Court will assume that Plaintiff has alleged facts plausibly suggesting that Defendant Bebee was acting in her capacity as a state actor when she committed the acts in question. Again, the Court does this with some hesitancy, given the fact that it is not clear in what position with the school district Defendant Bebee was acting which would have conferred upon her duties regarding Plaintiff's daughter during the time in question (or even that she was employed by a municipal entity rather than some private non-profit organization).[14]

More problematic is Plaintiff's claim against the Oswego City School District. As an initial matter, to the extent that Plaintiff seeks to impose liability on the City of Oswego or the Oswego City School District, there are no factual allegations plausibly suggesting liability by either entity. Moreover, "[a]lthough municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior.*"*Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 173 (D.Conn.2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 [1978] ).

However, despite the fact that *respondeat superior*

liability does not lie, a municipal entity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ."*Monell,* 436 U.S. at 690-91, 98 S.Ct. at 2036.Such municipal liability can be alleged in a case as this in various ways including, *inter alia,* through allegation of an officially adopted rule or widespread, informal custom plausibly suggesting "a deliberate government policy or failing to train or supervise its officers."*Bruker v. City of New York,* 337 F.Supp.2d 539, 556 (S.D.N.Y.2004) (citing and quoting *Anthony v. City of New York,* 339 F.3d 129, 140 [2d Cir.2003] ). A plaintiff may also allege such municipal liability by alleging facts plausibly suggesting that municipal officers have acquiesced in or condoned a known policy, custom or practice. *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.), *cert. denied, County of Schenectady v. Jeffes,* 531 U.S. 813, 121 S.Ct. 47 (2000); *Wenger v. Canastota Cent. Sch. Dist.,* 95-CV-1081, 2004 WL 726007, at *3 (N.D.N.Y. Apr. 5, 2004) (Scullin, C.J.).

Here, the Complaint is devoid of factual allegations that plausibly suggest liability against the Oswego City School District. Again, it is unclear that Defendant Bebee is employed by that entity (as opposed to being employed by Oswego County or some private non-profit organization). For example, at least one portion of the Complaint alleges that Defendant Bebee is employed by *Oswego County.*(*See*Dkt. No. 1, at 9-10).In addition, and more importantly, there are no factual allegations plausibly suggesting that, at the time of the alleged constitutional violations, Defendant Bebee was acting pursuant to an official custom, policy, or practice of the Oswego City School District. Rather, the Complaint rather explicitly alleges that Defendant Bebee was acting outside of her authority and pursuant to employment by the Baker Family.

**\*7** For all these reasons, Plaintiff's claims against Defendant Oswego City School District are dismissed for frivolousness.

### b. Right, Privilege, or Immunity Secured by the Constitution

As to the constitutional violations asserted in Plaintiff's Complaint, references to constitutional rights and amendments are generally confined to five of the twelve pages of the Complaint. (*See generally*Dkt. No. 1, at 1-3, 5, 10.)More specifically, construed with the utmost

liberality, Plaintiff's Complaint asserts that Defendant Bebee violated her following three constitutional rights: (1) her right to privacy under the Fourth Amendment; (2) her right to procedural due process under the Fourteenth Amendment; and (3) her right to equal protection of the laws under the Fourteenth Amendment. (*Id.*) In addition, Plaintiff asserts a conspiracy claim under 42 U.S.C. § 1983.(*Id.* at 2, 7-10.)[15]

With regard to Plaintiff's right-to-privacy claim under the Fourth Amendment, Plaintiff alleges that this violation occurred when the following acts occurred: (1) her home, in an unspecified city and state, was illegally searched at an unspecified time by an unspecified individual; and (2) Defendant Bebee relied on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, in her effort to kidnap Plaintiff's daughter, transport her from Florida to New York, and/or somehow restrict Plaintiff's parental rights. (*Id.* at 1-2, 4-5.)The first act is simply too vague and speculative to plausibly suggest a Fourth Amendment violation by Defendant Bebee. The second act, as alleged, does not give rise to a Fourth Amendment violation for three reasons: (1) it is highly questionable whether the act plausibly constitutes a violation of N.Y. Social Services Law § 422-a, which permits disclosure of a sealed child protection report by a social services commissioner under certain circumstances; (2) even if the act does plausibly constitute such a violation, a violation of state law does not, in and of itself, give rise to a violation of 42 U.S.C. § 1983, which requires a violation of either the United States Constitution or a federal statute;[16] and (3) even if that act does give rise to a constitutional violation, it is highly questionable whether Plaintiff has standing to assert that violation, because the report concerned Plaintiff's *daughter* (and Plaintiff is as a *pro se* litigant who cannot litigate the claim on behalf of her daughter).

With regard to Plaintiff's due process claim under the Fourteenth Amendment, Plaintiff alleges that Defendants failed to give any her notice and an opportunity to be heard (including an opportunity to present evidence and witnesses such as medical experts), presumably in a legal proceeding in Family Court in Oswego County to terminate Plaintiff's parental rights and/or modify her visitation rights. (*Id.* at 1-2.)This vague allegation does not allege facts plausibly suggest how much process was due because it does not allege in what type of proceeding Plaintiff was denied procedural protections (e.g., a modification of Plaintiff's visitation rights, a termination of Plaintiff's parental rights, a temporary removal of Plaintiff's daughter with the written consent of the person legally responsible for her care, a preliminary order of removal of Plaintiff's daughter after a petition is filed, a

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

preliminary order of removal of Plaintiff's daughter before a petition is filed, or an emergency removal of Plaintiff's daughter without a court order). Indeed, based on Plaintiff's other factual allegations, it is plausible that the proceeding was permitted to be conducted *ex parte.*It is even conceivable that Plaintiff did not even have standing to participate in the proceeding.

**\*8** With regard to Plaintiff's equal protection claim under the Fourteenth Amendment, Plaintiff alleges that Defendant Bebee treated Plaintiff unequally under the law by exceeding the scope of her job duties to (1) invade Plaintiff's privacy, (2) travel to Florida to kidnap her daughter, and (3) "impact" Plaintiff by traumatizing her daughter, and depriving her daughter of medical treatment in New York State. (*Id.* at 2-5.)To assert an equal protection claim, a plaintiff must allege facts plausibly suggesting that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. Otherwise, the alleged classification is subject to only "rational basis scrutiny." To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest."

Here, Plaintiff has not even alleged facts plausibly suggesting there has been any classification at all in this case, i.e., that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. (Rather, she alleges that Defendant Bebee acted differently compared to other social workers.) Moreover, even if Plaintiff had alleged facts plausibly suggesting that she was treated differently from others, she has not alleged facts plausibly suggesting that the alleged discrimination she experienced was not rationally related to a legitimate state interest (i.e., protecting Plaintiff's daughter by returning her to lawful custodians in New York State).

With regard to Plaintiff's conspiracy claim under 42 U.S.C. § 1983, she alleges that, between approximately August and December of 2000, Defendant Bebee conspired with numerous members of "the Baker family" to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, and transport her to New York. (*Id.* at 2, 7-10.)More specifically, Plaintiff alleges that this conspiracy possessed the following characteristics: (1) it was perpetrated by seven individuals; (2) it was motivated, in part, by revenge against Plaintiff for causing the "drug

bust" of one of the conspirators; (3) it was motivated also by the certain other conspirators' need for money to satisfy illegal gambling debts and to pay for a transgender operation; (4) it was preceded by witness tampering and extortion by one of the conspirators, and the making of a death threat to Plaintiff by another of the conspirators while Plaintiff was approximately eight months pregnant; (5) it culminated in the making of a bribe of $100,000 to Defendant Bebee, and a bribe of an unspecified amount to two other conspirators; and (6) it was followed by tax evasion by at least five of the seven conspirators.(*Id.*)

**\*9** To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts."*Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (citations and internal quotation marks omitted). Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,*464 U.S. 857 (1983).

Here, the only factual allegation contained in Plaintiff's Complaint that plausibly suggests a "meeting of the minds" between Defendant Bebee and any of the other six alleged conspirators is her receipt-at an unspecified place and time from an unidentified individuals-of $100,000 for a transgender operation. (Dkt. No. 1, at 2, 7-10.)These pleading deficiencies-which render his claim vague and conclusory-are fatal to Plaintiff's conspiracy claim. *See Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,*499 U.S. 937 (1991); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999).

For all these reasons, Plaintiff's claims against Defendant Bebee are dismissed for frivolousness.[17]

### 2. Statute of Limitations

Even when construed with the utmost of special leniency, the events giving rise to Plaintiff's claims occurred between approximately August of 2000 (when the conspirators started meeting about Plaintiff) and April of 2001 (when Defendant Bebee perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (Dkt. No. 1, at 3-8, 10.)

"The applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within

three years ."*Pinaud v. County of Sufolk,* 52 F.3d 1138, 1156 (2d Cir.1995) [citations omitted]; *see also Connolly v. McCall,* 254 F.3d 36, 40-41 (2d Cir.2001) ("[Plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions ....") [citations omitted]. A claim arising under Section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress."*Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) [internal quotation marks and citation omitted], *accord, Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002) [internal quotation marks and citations omitted].

Here, the three-year limitations period started running, at the latest, in April of 2001, and expired, at the latest, in April of 2004. Under the circumstances, the applicable three-year limitations period clearly bars Plaintiff's claims. The Court notes that Plaintiff, an experienced *pro se* litigant who has had similar if not identical claims barred due to untimeliness, was, when she filed this action, undoubtedly aware of this limitation period. *See, e.g., O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 11-12 (W.D.N.Y. filed Feb. 20, 2007); *O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 1, 16 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007).

**\*10** For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

**3. Res Judicata and Collateral Estoppel**
In the following three cases, Plaintiff's claims against Defendant Bebee and Oswego City Schools were previously dismissed on multiple grounds, including untimeliness: (1) *O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 10-12 (W.D .N.Y. filed Feb. 20, 2007) (dismissing Plaintiff's claims against Defendants Bebee and Oswego City Schools based on untimeliness and lack of federal jurisdiction); (2) *O'Neil v. State of New York,* 07-CV-0071, Decision and Order, at 6-7 (N.D.W. Va. filed July 19, 2007) (dismissing Plaintiff's claims against Defendants Bebee and City of Oswego for lack of federal jurisdiction); and (3) *O'Neil v.. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007) (dismissing Plaintiff's claims against Defendant Bebee as untimely pursuant to, *inter alia,* New York State's three-year statute of limitations governing certain of those claims).

For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

**4. Nature of Dismissal**
Generally, when a *pro se* action is dismissed *sua sponte,* the plaintiff should be allowed to amend his or her complaint once before their complaints are dismissed. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint.[18]Here, the flaws in Plaintiff's Complaint are substantive in nature such that better pleading would not cure them. As a result, the Court finds that it would be futile to afford Plaintiff an opportunity to amend her Complaint.

## III. PLAINTIFF'S MOTION FOR STAY AND TWO LETTER REQUESTS
Plaintiff's motion to stay the proceedings is rendered moot by the Court's dismissal of Plaintiff's action with prejudice due to its frivolousness. As a result, that motion is denied as moot. In the alternative, that motion is denied as procedurally improper in that it is unsupported by an affidavit, as required by Local Rule 7.1(a). Moreover, that motion is denied on the second alternative ground that it is unsupported by a showing of cause. (Dkt. No. 3.) Specifically, Plaintiff appears to be requesting that this action be stayed "in order to criminally arrest employees required to mandate abuse and were allegedly involved in human trafficking,...."(*Id.* at 2.) Finally, as for Plaintiff's two letters requesting requested that the Clerk issue summonses for service upon Defendants, in light of the foregoing, those requests are denied as moot. (Dkt.Nos.4, 5.)

## IV. ORDER TO SHOW CAUSE
A review of Plaintiff's litigation history reveals that, in addition to filing the current action in this District, she has filed five (5) other *pro se* civil rights actions in this District: (1) *O'Neil v. Diskey,* 5:09-CV-0540, Complaint (N.D.N.Y. filed on May 7, 2009) (transferred by Suddaby, J., to the Middle District of Florida on May 20, 2009); (2) *O'Neil v. Van Auser,* 5:09-CV-0594, Complaint (N.D.N.Y. filed on May 20, 2009) (dismissed for lack of subject matter jurisdiction by Mordue, C.J., on July 21, 2009); (3) *O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Complaint (N.D .Y. filed on Aug. 28, 2009) (dismissed for frivolousness by Suddaby, J., on February 9, 2010);

(4) *O'Neil v. Ponzi,* 5:09-CV-0985, Complaint (N.D.N.Y. filed on Aug. 28, 2009) (dismissed as duplicative by Suddaby, J., on Oct. 22, 2009); and (5) *O'Neil v. Pasco County,* 5:09-CV-1175, Complaint (N.D.N.Y. filed on Oct. 21, 2009) (transferred by Suddaby, J., to the United States District Court for the Middle District of Florida on December 7, 2009).

**\*11** Moreover, a review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") reveals that Aimee O'Neil has filed some forty (40) *pro se* civil rights actions in other federal courts across the country. These actions include thirty-two (30) *pro se* civil actions filed in the Western District of New York in 2007 (eighteen of which were filed in the same week). These actions also include seven (7) *pro se* civil actions filed in the Northern District of West Virginia. These actions also include two (2) *pro se* civil actions filed in the Middle District of Florida. Finally, these actions include one (1) *pro se* civil action filed in the Western District of Michigan.

All of Plaintiff's actions filed in the Western District of New York were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 7-18 (W.D.N.Y. filed Feb. 28, 2007). Similarly, all of Plaintiff's actions filed in the Northern District of West Virginia were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *1-5 (N.D.W.V. July 19, 2007), *aff'd by O'Neil v. Oswego County Dept. of Soc. Servs.,* 258 F. App'x 581 (4th Cir. Dec. 17, 2007). As for Plaintiff's three remaining actions in other districts, two were *sua sponte* dismissed (the third having been filed merely a month ago). Finally, it is important to note that many of the forty-six (46) *pro se* civil actions that Plaintiff has filed have been duplicative in nature. Indeed, the current action is duplicative in nature. *See, supra,* Part II.3. of this Decision and Order.

Under such circumstances, a federal district court may impose a reasonable filing restriction on a *pro se* litigant in that particular court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a), and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future

access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ("[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08-CV-0330, 2008 WL 1767067, at *1 (N.D.N.Y. Apr. 16, 2008) (McCurn, J.).

**\*12** It is worth noting that at least two federal district courts have imposed such a restriction on Plaintiff. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 18-20 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *6 (N.D.W.V. July 19, 2007), *aff'd by O'Neil v. Oswego County Dept. of Soc. Servs.,* 258 F. App'x 581 (4th Cir. Dec. 17, 2007).

Because of her history of filing vexatious, harassing or duplicative lawsuits, Plaintiff is hereby warned that the Court will not tolerate the filing of frivolous actions by her in the future. As a result, she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why this Court should not issue an Order barring her from filing any future *pro se* actions without first obtaining leave of the Court. In the event that Plaintiff fails to show cause, she will be prohibited from filing, in this Court, any action *pro se* (that is, without counsel), without prior leave of the Court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is *GRANTED;* and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua sponte***DISMISSED with prejudice** due to its frivolousness, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i),(ii); and it is further

**ORDERED** that Plaintiff's motion for a stay (Dkt. No. 3) is *DENIED;* and it is further

**ORDERED** that Plaintiff's requests that the Clerk issue summonses for service upon the Defendants (Dkt.Nos.4, 5) are *DENIED;* and it is further

**ORDERED** that *Plaintiff is hereby directed to* **SHOW CAUSE,** *within* **THIRTY (30) DAYS** *of the date of this Decision and Order, why this Court should not issue an Order barring her from filing any future pro se actions in this Court without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be* **PROHIBITED** *from filing, in this Court, any action pro se (that is, without counsel) without prior leave of the Court, pursuant to* 28 U.S.C. § 1651(a) *and the Court's*

inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Footnotes

1   Plaintiff should note that, although her motion to proceed *in forma pauperis* has been granted, she would still be required to pay other fees that she incurred in the action, including copying and/or witness fees, if this action were to proceed.

2   *See also Monestime v. FCC,* 09-CV-0296 (N.D.N.Y. Mar. 24, 2009) (Suddaby, J.) ("[F]ederal courts may (and have) *sua sponte* dismissed *pro se* civil rights complaints (in *in forma pauperis* proceedings) where the allegations therein are fantastic, fanciful, delusional, and/or paranoid. Indeed, this Court has done so."); *Henderson v. Clover Field,* 08-CV-0504, 2008 WL 2405705 (N.D.N.Y. June 11, 2008) (McCurn, J., adopting Report-Recommendation of Lowe, M.J.); *Mercier v. Mercier,* 07-CV-0523, 2007 WL 1582267, at *1-2 (N.D.N.Y. May 25, 2007) (Kahn, J.).

3   *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

4   *See also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ( "[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." ).

5   *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

6   For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199-2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was required to allege some sort of fact.

7   *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191 (2d Cir.2008); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

8   *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911 (1973) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi,* 469 F.2d at 692) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi* within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995); *accord Wachtler v. Herkimer County,* 35 F.3d 77, 82 (2d Cir.1994).

9    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1984 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 2541, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) ("*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *accord, Traguth,* 710 F.2d at 95;*cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if her mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

10    Plaintiff is advised that there is no Section 1876 in volume 42 of the United States Code. Plaintiff also references Section 1871 in the first paragraph of her Complaint, which is unrelated to civil rights, and instead addresses international cooperation and coordination of the National Science Foundation with foreign policy. *See*42 U.S.C. § 1871.

11    In *O'Neil v. Van Auser* and *O'Neil v. Ponzi-Flett,* Plaintiff named M.O. as a plaintiff, and in both cases she was advised that M.O. must be properly represented before commencing an action in federal court. *See O'Neil v. Van Auser,* 5:09-CV-0594, Memorandum-Decision and Order, at 1, n. 1 (N.D.N.Y. filed July 21, 2009) (Mordue, C.J.); *see also O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Report-Recommendation, at 2 (N.D.N.Y. filed Sept. 9, 2009) (Lowe, M.J.).

12    *See Rest v. Weissman,* 08-CV-0340, 2008 WL 5191733, at *5 (N.D.N.Y. Dec. 10, 2008 (Kahn, J. adopting on *de novo* review Report-Recommendation of Lowe, M.J.) (dismissing claims that "[e]ven construed with the special solicitude," were confusing, ambiguous, vague and/or otherwise unintelligible under Federal Rules of Civil Procedure 8(a)(2) and 10(b)").

13    *See also DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,*520 F.2d 409 (2d Cir.1975); *Lawson v. Abrams,* 84-CV-4325, 1988 WL 49244, at *4 (E.D.N.Y. May 6, 1988) (dismissing as frivolous pro se complaint where plaintiff failed to allege state action on part of defendants), *accord, Carollo-Gardner v. Diners Club,* 628 F.Supp. 1253, 1256-57 (E.D.N.Y.1986).

14    Indeed, the Court notes that Plaintiff alleges that Defendant Bebee had no professional relationship with Plaintiff's daughter. (Dkt. No. 1 at 5-6.)

15    The Court notes that Plaintiff also asserts several claims arising under New York State law, including (but not limited to) negligence, fraud, defamation, invasion of privacy, malpractice, breach of confidentiality, and intentional infliction of emotional distress. (*Id.* at 3-6, 10.)However, because a cause of action under 42 U.S.C. § 1983 may not be premised solely on a violation of state law (but requires a violation of either the United States Constitution or a federal statute), and because the Court would decline to exercise supplemental jurisdiction over any of Plaintiff's pendent state law claims, the Court need not, and will not, analyze these claims in this Decision and Order.

16    In addition, the Court notes that New York Social Service Law § 419 grants immunity to individuals, officials and institutions for making good faith reports and other related actions from any liability, civil or criminal. N.Y. Soc. Serv. Law § 419.

17    The Court notes that Plaintiff's Complaint also raises the specter of a claim under a federal statute known as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat.1936 (1996). HIPAA was enacted by Congress in order to protect against unwarranted disclosure of health records and information, authorizing the Secretary for Health and Human Services "to make final regulations concerning the privacy of individually identifiable health information."*Barnes v. Glennon,* 05-CV-0153, 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (*citing and quoting Nat'l Abortion Fed'n v. Ashcroft,* 03-CV-8695, 2004 WL 555701, at *2 [S.D.N.Y. Mar. 19, 2004], and 42 U .S.C. §§ 1320d through 1320d-8). Courts addressing claims similar to the claim implicitly raised by Plaintiff have determined that, in light of the availability of monetary and criminal penalties to be assessed by the Secretary of Health and Human Services or the State, *see*42 U.S.C. § 1320d-6(b), the statute does not confer an independent private right of action. *See Barnes,* 2006 WL 2811821, at *5-6; *Cassidy v. Nicolo,* 03-CV-6603, 2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7, 2005); *see also Pecou v. Forensic Committee Personnel,* 06-CV-3714, 2007 WL 1490450, at *2 (E.D.N.Y. Jan. 5, 2007). Courts presented with the issue also have held that, because HIPAA does not create a private right, it cannot be privately enforced via Section 1983. *Adams v. Eureka Fire Protection Dist.,* 09-CV-1315, 2009 WL 3352032, at *1 (8th Cir. Oct. 15, 2009); *see also, Auld v. Davidson,* No. 08-3110-TC, 2009 WL 1559777, at * 1 (D. Or. June 2, 2009); *Howard v. Douglas County Jail,* No. 09-3085-SAC, 2009 WL 1504733, at *4 (D.Kan. May 28, 2009); *Frazier v. Arkansas Dept. of Corr.,* 07-CV-00184,2009 WL 856990, at *9 (E.D.Ark. Mar. 30, 2009). Accordingly, the Court finds that any alleged HIPAA violations will not support Plaintiff's Section 1983 claim, and, to the extent her Complaint is construed as asserting a cause of action under HIPAA, the claim is subject to dismissal as a matter of law.

18    *See* *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") [citation omitted].

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

---

2014 WL 2208125
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Robert H. AJAMIAN, Plaintiff,

v.

Morgan Stanley Smith BARNEY; and
Edward Dominquez, Broker, Defendants.

No. 1:14–cv–306 (DNH/
ATB).    |    Signed May 28, 2014.

**Attorneys and Law Firms**

Robert H. Ajamian, Latham, NY, pro se.

**Opinion**

### *DECISION and ORDER*

DAVID N. HURD, District Judge.

**\*1**  Pro se plaintiff Robert H. Ajamian filed this complaint on a form for civil rights actions pursuant to 42 U.S.C. § 1983. On May 6, 2014, the Honorable Andrew T. Baxter, United States Magistrate Judge, advised, by Report–Recommendation that plaintiff's complaint be dismissed sua sponte with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff timely filed objections to the Report–Recommendation.

Based upon a de novo review of the portions of the Report–Recommendation to which plaintiff objected, the Report–Recommendation is accepted in whole. *See* 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is DISMISSED; and

2. The Clerk is directed to file a Judgment accordingly, serve a copy of this Decision and Order and the Judgment on plaintiff, and close the file.

IT IS SO ORDERED.

**End of Document**                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.